In the Matter of the Judicial Settlement of the Account of
JOHN D. LYONS, as Administrator, etc., of ANDREW DON-
NELLY, JR., Deceased.

MARY DONNELLY, an Infant, Appellant; JOHN D. LYONS,
as Administrator, Respondent.

Third Department, January 8, 1919.

**Decedent's estate — note given to wife of intestate without con-
sideration — repudiation of note by widow — administrator should
not charge note against estate — duty of administrator to infant
— alleged contract to pay administrator for defending litigation —
unauthorized investment by administrator — account surcharged.**

An administrator of a decedent who left a widow and an infant daughter
should not charge against the estate a note given by the decedent to his
wife without consideration, where the wife subsequently repudiated the
note, renounced all rights thereunder, and disclaimed all knowledge of it.

Evidence examined, and *held*, that the note never had any legal inception
and that the testator's widow when verifying a claim on the note against
the estate was not aware of the nature of the paper she signed.

The administrator on his final accounting claimed $4,000 under an alleged
contract with the widow whereby he was to act as administrator and
also to protect the estate against threatened litigation. It appeared,
however, that the administrator performed no services for the estate or
for the widow, except as an administrator, and that he employed and
paid other attorneys to defend the litigation against the estate. *Held*,
that the alleged contract had no relation to the note given by the decedent
to his wife and that any contract made by the widow should be settled
out of her interest in the estate and was not binding as against the infant.

It became the duty of the administrator to acquiesce in the attitude of the
widow when she renounced her claim as creditor by virtue of the note.

*Held further*, that the contract as evidenced by the conversations of the
parties only entitled the administrator to the $4,000 in case he was
successful in defending the litigation against the estate, which was not
the case.

It is the duty of an administrator to settle an estate speedily and distribute
the funds, and if, instead of so doing, he invests the funds the income
belongs to the estate and not to him.

APPEAL by Mary Donnelly, an infant, by her general
guardian and by her special guardian, from a decree of the
Surrogate's Court of the county of Sullivan, entered in the

Third Department, January, 1919. [Vol. 186.

· office of said Surrogate's Court on the 28th day of December, 1914, judicially settling the account of the administrator herein.

*Arthur C. Kyle*, special guardian, in person, and *Russell Wiggins*, for the appellant.

*John D. Lyons*, administrator and attorney in person [*Nellie Childs Smith* of counsel], for the respondent.

COCHRANE, J.:

Andrew Donnelly, Jr., died September 23, 1906. Five days later letters of administration were issued to the respondent. The intestate left a widow and a daughter five or six years old who is the appellant herein and his only next of kin. No accounting having been had, in July, 1913, the widow instituted a proceeding to compel the administrator to account. He thereupon filed his account, to which objections were filed by the widow and guardian of the infant. After a contest in Surrogate's Court a decree was entered December 19, 1914, from which an appeal has been taken in behalf of the infant. There is no appeal by the widow who has since died. The controversy on this appeal relates only to the rights of the administrator and the infant.

The personal estate of the intestate amounted to $10,812.13, consisting almost entirely of the proceeds of life insurance which came into the hands of the administrator about a month after the death of the intestate. The administrator credits himself in his account with payments of debts and funeral and testamentary expenses amounting to $11,026.22, leaving the estate in debt to himself. The account was adjusted by the surrogate as filed. There are unpaid debts as fixed by the surrogate amounting to $1,001.14.

The principal objection to the account was the alleged payment by the administrator of a note of $6,000 to the widow, Frances Donnelly. This note was executed by the intestate about six months before his death. It was payable on demand and recited on its face that it was given " as compensation for her faithful service and attendance during her married life." Assuming that such a note is enforcible it is only

enforcible at the instance of one who has a right to enforce it. Mrs. Donnelly repudiated the note, renounced all rights thereunder and in fact disclaimed all knowledge of it. We, therefore, have the anomalous situation of an administrator insisting on the payment of a claim against the estate in favor of a person repudiating the claim and renouncing all rights thereunder. The reason for this unusual condition is that the administrator claims that he made a contract with the widow whereby he was to act as administrator and protect the estate against threatened litigation and to be paid by her the sum of $4,000. The credit to himself in his account of the $6,000 note includes $4,000 which he claims for himself personally by reason of this contract. He made payments of money to her at different times aggregating $1,820. There were other small payments made to her or for her benefit but they appear to have been otherwise credited to him in his account. On November 22, 1906, one of those payments amounting to $1,000 was made and at that time he gave her a receipt for $4,000, the receipt stating that it was " for services rendered and to be rendered in the protection of her interest in the Donnelly estate." It is not contended by the administrator that the $6,000 note has been paid or extinguished except by the application thereon of said $4,000 contract for his services. Of course Mrs. Donnelly could make no contract binding any interest in the estate except her own. The effect of this $4,000 contract, therefore, in connection with the note was to throw the burden of the contract on the estate.

A careful scrutiny of the evidence convinces us that the note never had any legal inception, and in reaching this conclusion we do not question the veracity of the administrator, between whose testimony and that of the widow there is a wide divergence, but we accept his testimony and doing so we are still led to the conclusion indicated. The administrator testifies that as attorney for the intestate he drew the note in his sick room and that it was given to Mrs. Donnelly. This she denies. He does not testify that she was present when the note was signed or during any part of the transaction which resulted in its execution. None of the conversation appears in evidence and there is no explanation of the situation which caused the note to be executed. Not a word of explanation

accompanied the so-called delivery to Mrs. Donnelly. It does not appear that she was ever a creditor of her husband. She never claimed to be one. Accepting the testimony of the administrator she took the note mechanically when it was handed her by her husband as she might have taken any paper he gave her and without any sign of recognition of its contents much less of any importance which it bore to herself. She seems never to have realized that there was such an instrument in her favor or if there was that it possessed for her any significance. She never recognized it as an enforcible liability in her favor. It is true that she appears to have verified a claim on the note against the estate the day after the appointment of the administrator but that was at his solicitation acting through his clerk. She says that she signed the verification because the request for her to do so came from the administrator and that she did not understand its purport and that when she signed the verification the note or a copy of it was not attached thereto. This testimony is uncontradicted. The verification did not in terms refer to the note. The different payments made to her were not specifically made on the note and she may well have understood that they were merely payments on account of her distributive share in the estate as the widow of the deceased. As far as the evidence discloses there was no consideration for the note and the case is destitute of satisfactory evidence indicating an intention by Mrs. Donnelly ever to assert a claim against the estate on the basis of this note. We are, therefore, constrained to hold that the note was at no time accepted by the widow as a liability against her husband.

We think, moreover, that the $4,000 contract had no relation to the note and was not made on the faith thereof. The testimony of the administrator as to the making of this contract indicates clearly that the note was not in the mind of either party as the basis for that contract. It was made two or three days after the death of the intestate and is narrated by the administrator as follows: " She wanted me to be administrator of the estate and I declined to act and told her that if there was going to be trouble that it would probably be in Rockland County, a large share of it, and that the commissions that the law allowed any administrator would not be

sufficient, and I suggested she be estate administrator and that I act as her attorney. She said she did not know who to secure to go on her bonds; her people were in moderate circumstances and that there was no one to go on her bonds for the $20,000. She told me that she would pay me $2,000 out of what she received from the estate and I declined, and she said then, she would make it $3,000, and I still declined and told her I thought it would be a good deal better that she be the estate administrator and I would act as an attorney for the estate; that figuring it the way she estimated the estate to be worth, we know there was $10,000 in life insurance, she said that the two cottages cost Mr. Donnelly $4,300 apiece and that he had been offered $5,000 for the Broadway property and had asked $6,000 for it. I saw there was substantially $24,000 worth of property, and finally she said I will give you $4,000 for this if you will take care of me and my little girl and keep those Haverstraw people from getting the property away from us." There was no reference here to the note but the conversation indicated that the administrator was to be paid by Mrs. Donnelly out of her interest in the estate as the widow of the intestate and not as his creditor. It afterwards transpired that the real estate was mortgaged and two parcels were sold for the amount of the mortgage thereon. There is no evidence as to the third parcel.

We may, however, go further and hold that even if the note was a valid obligation in favor of the widow and if it was understood that the administrator was to be paid $4,000 out of this note he is not in a position to enforce that contract. The question is not complicated as it might be if he had performed valuable services on the strength of such a contract. The record shows clearly that the administrator performed neither for the estate nor for the widow any substantial services except such as administrator he was bound to perform. Litigation was anticipated and that was the foundation for making the $4,000 contract between the administrator and the widow. The threatened litigation developed and resulted in judgments against the estate aggregating something over $3,000 with which the administrator is credited in his account. But he employed other attorneys to conduct that litigation and they have presented bills therefor payable

out of the estate aggregating over $1,100. So that the administrator has not incurred any expense nor performed any services to justify his contract. He is not in the position of an administrator who in good faith has parted with the money of his estate in payment of a claim which subsequently turns out to be unfounded. This administrator has parted with nothing. He still has the $4,000 in his possession intact except as he may be entitled to some credits against the same as hereafter indicated. It may be that the widow is personally liable on her contract if he consented on the strength thereof to become the administrator. But the question here is not between him and the widow but between him and the infant. As between them it was his duty to protect the estate not only against the " Haverstraw people " but also against any claim which might be made by the widow or any other person. The administrator has placed himself in an inconsistent relationship to the estate. As administrator it became his duty to acquiesce in the attitude of the widow when she renounced her claim as a creditor by virtue of the note. As an individual notwithstanding her attitude he insists on the payment of the note to her against her wishes in order that he may personally gain pecuniarily. Such a dual relationship the law does not tolerate. The argument that the widow assumes this attitude for the purpose of defeating his claim against her does not relieve the situation. As administrator he cannot object that she does not press the note and it was his duty to forestall the present situation by refusing to make a contract which had in it the possibility of a dilemma which the law cannot sanction.

It is also to be observed that the proposition of Mrs. Donnelly as stated by the administrator and which he accepted was as follows: " I will give you $4,000 for this if you will take care of me and my little girl and keep those Haverstraw people from getting the property away from us." The fair meaning of this was that the $4,000 was to save the estate harmless from all claims of the " Haverstraw people." It was not a proposition to pay him $4,000 irrespective of results. The $4,000 was not earned unless those claims were defeated or if they had been established for less than that amount the administrator probably would have been entitled to the difference after paying the expenses of the litigation.

As we have seen, the estate has paid and become liable to pay more than $4,000 by reason of those claims and fees of attorneys in opposing the same. Under the terms of the contract, therefore, the administrator has not complied with the condition on which he was to be paid $4,000. For all the reasons indicated the $4,000 contract cannot be sustained and that leads to a consideration of the question of interest for which the administrator is chargeable.

On November 12, 1906, the administrator used $6,000 of the funds of the estate then in the bank to his credit as such administrator to take to himself as administrator an assignment of a purchase-money bond and mortgage for that amount which two years before he had executed on a farm and for the payment of which he was personally liable and which was then overdue. The bank account shows him charged with that amount on that day. Of course this necessarily included the $4,000 which he claimed to own by virtue of his contract with the widow. In the following March the account in the bank was closed and has never been reopened. On October 3, 1911, the farm was sold to another party, the administrator satisfied the mortgage against himself, took back to himself personally another mortgage for the sum of $7,000 which he subsequently foreclosed and now owns the farm. Some portions of said $6,000 were subsequently paid for the benefit of the estate as necessity required. But, as stated, the administrator has always claimed to own personally $4,000 of the funds of the estate which we are constrained to hold he did not own and that portion of the estate went into the said investment. Ordinarily of course an administrator is not supposed to invest the funds of an estate and derive interest therefrom. His duties imply too speedy a settlement and distribution of the funds to make investments. But here settlement of the estate has been delayed for many years, during all of which time a large portion thereof has been invested. The investment was made by the administrator. He testifies to it. He has never made concealment of it. His position is that the greater part of the investment was his because of his contract with the widow and that such investment, therefore, inures to his personal advantage. His premise being wrong, his conclusion is wrong and it is beyond argument

that under such circumstances the estate and not the administrator is entitled to the earnings.

The account of the administrator must be surcharged. As between him and the infant a statement of the account as favorable to him as the circumstances permit is as follows: He charges himself in his account with $10,812.13; all of the credits claimed by him, including his commissions and the allowances made by the surrogate on the accounting, but excluding the $6,000 note, are $5,411.42; in addition he may be credited with payments to the widow of $1,820, which fully covered her distributive share in the estate; leaving a balance in his hands not accounted for of $3,580.71 which amount with interest thereon from November 12, 1906, to the present time he should pay to the general guardian of the infant, except that he should retain therefrom and pay the unpaid bills specified in the decree amounting to $1,001.14 besides interest thereon from the date of the decree.

The decree should be modified in accordance with this opinion and as so modified affirmed, without costs to either party as against the other. The court disapproves the third, seventh and eighth findings of fact of the surrogate, and finds as facts that the $6,000 note was without consideration and was not delivered to the widow or accepted by her and that the $4,000 contract was not made on the faith of the note and had no relation thereto.

Decree modified in accordance with opinion, and as so modified unanimously affirmed, without costs to either party as against the other. The court disapproves of the third, seventh and eighth findings of fact of the surrogate, and finds as facts that the $6,000 note was without consideration and was not delivered to the widow or accepted by her and that the $4,000 contract was not made on the faith of the note and had no relation thereto.